IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

TONIA CANNON,                        )
                                     ) CIVIL ACTION
            Plaintiff,               )
                                     ) NO: 1:11-CV-1030-TWT-ECS
v.                                   )
                                     )
SOUTH ATLANTA COLLISION CENTER,      )
LLC, and SOUTH ATLANTA               )
AUTOMOTIVE GROUP, LLC, d/b/a/        )
LEXUS OF SOUTH ATLANTA,              )
                                     )
                                     )
            Defendants.              )


## REPORT AND RECOMMENDATION AND ORDER OF
## UNITED STATES MAGISTRATE JUDGE


Plaintiff filed this employment discrimination suit on March
31, 2011. [Doc. No. 1]. In lieu of filing an answer, Defendant
filed the present motion to compel arbitration, requesting that the
Court order Plaintiff to arbitrate her claims and that the
proceedings in the case be stayed. [Doc. 4]. Upon consideration,
and for the reasons addressed herein, the Court concludes that
Defendant's motion to compel arbitration should be **DENIED**.

### I.
### Background

Plaintiff is a former employee of Defendant South Atlanta
Automotive Group ("SAAG"). On January 31, 2008, either before or
near the beginning of her employment with SAAG, Plaintiff signed an
"Agreement to Arbitrate" that, among other things, required her to

arbitrate "any claim ... of an alleged unlawful act by [Defendant] of any kind relating to my employment and/or termination of employment ...." <u>See</u> [Doc. 4-2 ¶¶ 1, 5]. After she was terminated from her position with Defendant SAAG in February 2009, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission. [Doc. 1 ¶ 17]. She then filed the instant lawsuit, which alleges race and gender discrimination in violation of Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e et seq. ("Title VII"). [Doc. 1].

Defendant filed its motion to compel arbitration on June 10, 2011, arguing that the arbitration agreement encompasses Plaintiff's Title VII claims and that Plaintiff refuses to submit her claims to arbitration voluntarily. <u>See</u> [Doc. 4]. In response, Plaintiff submits that (1) the arbitration agreement is unconscionable, lacks mutuality and contains illusory promises; that (2) the Federal Arbitration Act is unconstitutional; and that (3) Plaintiff is excluded from the Federal Arbitration Act's coverage. [Doc. 7, 3-11]. Defendant's reply in support of its motion addresses Plaintiff's arguments, but does not directly address the argument that Section 4 of the agreement lacks mutuality and is illusory. <u>See</u> [Doc. 9].

The arbitration agreement signed by Plaintiff contains ten enumerated paragraphs, three of which form the basis for Plaintiff's

2

contention that the agreement is unconscionable and, thus, does not require her to submit to arbitration. In particular, Plaintiff contends that Sections four (4), seven (7), and nine (9) evidence "Defendants' scheme to deprive Plaintiff of her day in court." [Doc. 7, at 4]. The pertinent portions of the arbitration agreement are as follows:

> 1. <u>Binding Arbitration</u> - I hereby agree to submit my claim as defined in this agreement against Lexus of South Atlanta ... to final and binding arbitration rather than resorting to any administrative and/or judicial bodies....
> ....
>
> 4. <u>Rules Governing Scheduling and Conduct of Arbitration</u> - It is my understanding that, if an arbitrable claim arises that the procedures to be followed, in scheduling and conducting the arbitration, except as modified by this agreement, shall be those followed by the American [A]rbitration [A]ssociation as set forth in its employment dispute resolution rules, or a comparable alternative dispute resolution service that the company may designate (Hereinafter "AAA")....
>
> 5. <u>Definition of Arbitrable Claim</u> - For purposes of this agreement, an arbitrable claim is any claim by me of an alleged unlawful act by [Defendant] of any kind relating to my employment and/or termination of employment ... arising under or in reliance upon statute (Federal, State, or Local) ....
> ....
>
> 7. <u>Selection of Impartial Arbitrator</u> - ... I agree that an impartial arbitrator will be selected from a list of seven (7) qualified and impartial arbitrators provided to the parties by AAA. In order to be considered qualified, the impartial arbitrator must be an attorney in good standing with at least fifteen (15) years of experience in employment and labor relations matters. An impartial arbitrator must be a member of a law firm with more than

15 attorneys, unless otherwise agreed to by the parties. From this list, the parties alternately strike names until only one name remains. The Impartial arbitrator whose name remains shall be declared the impartial arbitrator for purposes of my dispute. Also hearing the grievance shall be two (2) additional arbitrators. One of the additional arbitrators shall be of my selection; the other shall be selected by the company. The additional arbitrators must be full time employees of Lexus of South Atlanta at the time the arbitrations are heard....
....

9. <u>Fees and Expenses of Arbitration</u> - The fees associated with the impartial arbitrator shall be shared equally between the parties, unless otherwise directed by the impartial arbitrator. Either party may arrange for stenographic transcription of any arbitration proceedings at their own cost.

10. <u>Judicial Jurisdiction</u> ... If any part of this agreement is held void, voidable, or otherwise unenforceable by any court or arbitrator, nothing contained herein shall limit the enforceability of any other part.

[Doc. 4-2].

## II.
## Discussion

### A.   The Federal Arbitration Act

The Federal Arbitration Act, 9 U.S.C. §§ 1-15, ("FAA") establishes a "liberal federal policy favoring arbitration agreements." <u>Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.</u>, 460 U.S. 1, 24 (1983). Section 2 of the FAA provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for

4

the revocation of any contract." 9 U.S.C. § 2. Section 3 of the FAA authorizes federal district courts, upon application of a party, to stay proceedings regarding "any issue referable to arbitration under an agreement in writing for such arbitration ... until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. Section 4 of the FAA grants federal district courts the power to compel arbitration "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue." 9 U.S.C. § 4.

The Supreme Court has instructed courts to "rigorously enforce agreements to arbitrate." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 221 (1985). However, the FAA "simply requires courts to enforce privately negotiated agreements to arbitrate ... like other contracts, in accordance with their terms." Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ., 489 U.S. 468, 478 (1989)(citations omitted). The FAA "does not require parties to arbitrate when they have not agreed to do so." Id. (citations omitted). In this context, "courts have consistently found that claims arising under federal statutes may be the subject of arbitration agreements and are enforceable under the FAA." Caley v. Gulfstream Aerospace Corp., 428 F.3d 1359, 1367 (11th Cir. 2005) (quoting Weeks v. Harden Mfg. Corp., 291 F.3d 1307, 1313 (11th Cir. 2002)); see Circuit City v. Adams, 532 U.S. 105, 123 (2001); Gilmer

5

v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26 (1991); Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 628 (1985); Bender v. A.G. Edwards & Sons, Inc., 971 F.2d 698, 700 (11th Cir. 1992). "Indeed, compulsory arbitration agreements are now common in the workplace, and it is not an unlawful employment practice for an employer to require an employee to arbitrate, rather than litigate, rights under various federal statutes, including employment-discrimination statutes." Caley, 428 F.3d at 1367 (citing Weeks, 291 F.3d at 1313-14).

**1. The FAA covers the agreement and Plaintiff's Title VII claims are within the agreement's scope**

In this case, Plaintiff argues that a "strict reading" of the FAA requires the Court to find that she is exempted from the Act's coverage because "she is an interstate commerce employee of an automobile dealership." [Doc. 7, at 11]. The exclusion provision in § 1 of the FAA states that "nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." In Circuit City, the Supreme Court addressed the meaning of § 1 and found that the exclusion provision cited above is limited in application to transportation workers, "defined, for instance, as those workers 'actually engaged in the movement of goods in interstate commerce.'" 532 U.S. at 112-113 (quoting Cole v. Burns

6

<u>Int'l Security Servs.</u>, 105 F.3d 1465, 1471 (C.A.D.C. 1997)).
Plaintiff has not set forth any basis for the Court to conclude
that, because her arbitration agreement was with an automobile
dealership, she belongs to the limited class of "transportation
workers" that § 1 of the FAA excludes. <u>See</u> [Doc. 7, at 11]. Rather,
Plaintiff appears to attempt to draw the same distinction as the
Respondent in <u>Circuit City</u>, namely that the exclusion provision of
§ 1 broadly applies to all employment contracts involving work that
affects interstate commerce, an interpretation the Supreme Court
expressly disavowed. <u>See</u> <u>Circuit City</u>, 532 U.S. at 119.

    Additionally, the arbitration agreement states that Plaintiff
agrees to arbitrate any claim arising under federal law "of any kind
relating to my employment and/or termination of employment..." [Doc.
4-2 ¶ 5], which clearly includes Plaintiff's Title VII claims. <u>See</u>
<u>Volt Info. Sciences, Inc.</u>, 489 U.S. at 478; <u>Caley</u>, 428 F.3d at 1367.
Thus, the Court finds that the FAA applies to the subject
arbitration agreement and that the claims Plaintiff has asserted in
this lawsuit are within the scope of that agreement. Having reached
this conclusion, the Court must also determine if the agreement is
otherwise enforceable.

7

AO 72A
(Rev.8/82)

**B.  Unconscionability**

**1.  The parties' arguments regarding unconscionability**

Plaintiff argues that, under § 2 of the FAA and Georgia law, the arbitration agreement should be denied enforcement. Specifically, she asserts the contract defense of unconscionability with regard to Sections 7 and 9 of the arbitration agreement. Plaintiff also asserts that Section 4 is too indefinite for legal enforcement, because Defendant has reserved to itself the right to choose which rules govern the arbitration proceeding. [Doc. 7, at 7-8]. According to Plaintiff, "Section 7 is calculated to stack the deck against all employment claim Plaintiffs," in that it requires the impartial arbitrator to have fifteen (15) years experience in labor and employment law and be from a law firm with more than fifteen (15) attorneys, "effectively exclud[ing] EVERY Plaintiff's employment law firm from ever arbitrating such claims." [Doc. 7, at 5-6]. Plaintiff further submits that creating an arbitration panel from the one unfairly selected attorney arbitrator plus two additional arbitrators who must be current employees of Defendant, as required by Section 7, is "the height of unfairness and unconscionability." [Doc. 7, at 6].[1]

---

[1]  Plaintiff also argues that Section 9 of the agreement is unconscionable in that it requires fees "to pay for her case to proceed [in arbitration] when she used to have a right of access to the Courts unfettered by paying for the Judge, the Court staff or

8

Defendant responds by arguing that courts should not indulge the presumption that the arbitral body conducting the proceeding will not retain impartial arbitrators. [Doc. 9, at 3-4] (citing Mitsubishi, 473 U.S. at 634; Walker v. Ryan's Family Steak Houses, Inc., 400 F.3d 370, 385 (6th Cir. 2005)). Defendant further submits that the single exception to the above rule occurs when the arbitration panel is fundamentally unfair, "such as when one party maintains the exclusive right to appoint the arbitrator." [Doc. 9, at 4] (citing McMullen v. Meijer, Inc., 355 F.3d 485, 494 n.7 (6th Cir. 2004)). Nevertheless, Defendant states that it is willing to forego the provision of the agreement that requires two additional employee arbitrators and proceed instead under a single, impartial arbitrator. [Doc. 9, at 4].

---

even the Clerk." [Doc. 7, at 7]. However, Plaintiff does not set forth any argument to establish how the agreement's cost-sharing provision would preclude her from effectively vindicating her rights in an arbitral forum. See Musnick v. King Motor Co., 325 F.3d 1255, 1258 (11th Cir. 2003) ("[A] Title VII plaintiff seeking to avoid his agreement to arbitrate his discrimination claim by arguing that prohibitive arbitration cost would undermine his statutory remedy has to demonstrate that he is likely to bear such costs."). Plaintiff fails to address the fact that Section 9 of the agreement actually gives the arbitrator discretion in determining how the fees will be apportioned among the parties. See [Doc. 4-2 ¶ 9]. An agreement is not unenforceable merely because it may involve some "fee-shifting." Cash in Advance of Florida, Inc. v. Jolley, 272 Ga. App. 282, 612 S.E.2d 101 (2005). Thus, the Court will consider this cost-sharing provision in determining whether the agreement is unconscionable, but as a factor to be evaluated in light of the totality of the agreement's provisions.

AO 72A
(Rev.8/82)

**2. The relevant law on unconscionability**

Under § 2 of the FAA, written arbitration provisions are declared to be "valid, irrevocable, and enforceable, save upon such grounds as exist at law or equity for the revocation for any contract." "Thus, state law, whether of legislative or judicial origin, is applicable if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally." Perry v. Thomas, 482 U.S. 483, 492 n.9 (1987). Accordingly, state law contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2. Id. (citations omitted). In determining whether a binding agreement arose between the parties, courts apply the contract law of the particular state that governs the formation of contracts. Caley, 428 F.3d at 1368. The federal policy favoring arbitration, however, is taken into consideration even in applying ordinary state law. Id. (quoting Cooper v. MRM Inv. Co., 367 F.3d 493, 498 (6th Cir. 2004)).

Under Georgia law, an unconscionable contract has been defined as "one abhorrent to good morals and conscience .... where one of the parties takes fraudulent advantage of another." Hall v. Wingate, 159 Ga. 630, 667, 126 S.E. 796, 813 (1924). However, the process by which Georgia courts have reached the conclusion that a given contract provision is unconscionable has been discussed only in

10

general and conclusory terms. See NEC Techs., Inc. v. Nelson, 267 Ga. 390, 391, 478 S.E.2d 769, 771 (1996). Thus, the Georgia Supreme Court has "found it helpful to conduct a review of foreign authorities" when deciding issues of unconscionability, id. at 391-92, and has discussed unconscionability "not [as] a concept, but a determination to be made in light of a variety of factors not unifiable into a formula." Id. In Nelson, the Georgia Supreme Court noted that courts have divided the relevant considerations into two components: procedural unconscionability, which addresses the process of making the contract, and substantive unconscionability, which looks to the contractual terms themselves. Id. Procedural unconscionability considers the "age, education, intelligence, business acumen and experience of parties, their relative bargaining power, the conspicuousness of and comprehensibility of the contract language, the oppressiveness of the terms, and the presence or absence of meaningful choice." Id. Substantive unconscionability addresses "the commercial reasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and similar public policy concerns." Id.

**3. Sections 4 and 7 of the agreement are unconscionable**

**a. Requiring that two of the three arbitrators be employees of Defendant is unconscionable**

Section 7 of the arbitration agreement requires that two of the three arbitrators selected to hear the dispute "must be full time employees of Lexus South Atlanta at the time the arbitrations are heard." The Court need not indulge any presumption about the impartiality of such a panel, see <u>Mitsubishi</u>, 473 U.S. at 634, because its fundamental unfairness is evident. The two employees' relationship to Defendant creates inherent conflicts, both personal and financial, for the employees in any dispute in which Defendant, their employer, is a party. On its face such a provision confers a grossly unfair advantage upon Defendant and stacks the deck in its favor. <u>See Hall</u>, 159 Ga. at 667. It is difficult to perceive how the panel would not be irremediably biased by selection under such a provision.

Courts have not hesitated to conclude that provisions in arbitration agreements that give the employer such an unfair advantage over the employee in the selection of an arbitrator are unconscionable. <u>See, e.g.</u>, <u>Nino v. Jewelry Exchange</u>, 609 F.3d 191 (3rd Cir. 2010) (pervasively one-sided employment arbitration agreement unenforceable); <u>Walker v. Ryan's Family Steakhouses, Inc.</u>, 400 F.3d 370 (6th Cir. 2005) (arbitration agreement with third party

12

arbitration service unenforceable where service had financial interest in keeping its arbitration contracts with defendant); <u>Hooters of America, Inc. v. Phillips</u>, 173 F.3d 933, 940 (4th Cir. 1999) (employer breached arbitration agreement by promulgating unfair arbitration rules). And the fact that this advantage is conferred upon Defendant, the party with greater bargaining power in the employer-employee relationship with Plaintiff, is further evidence of the provision's unconscionability. <u>See</u> <u>Nelson</u>, 267 Ga. at 772; <u>Nino</u>, 609 F.3d at 204. "By agreeing to arbitration in lieu of litigation, the parties agree to trade the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration, but they do not accede to procedures utterly lacking in the rudiments of even-handedness." <u>Nino</u>, 609 F.3d at 204 (quoting <u>Murray v. United Food & Commercial Workers Intern.</u>, 289 F.3d 297, 303 (4th Cir. 2002).

**b. The impartial arbitrator provision is unconscionable**

Defendant contends that neither party has exclusive control over the arbitration panel because the parties select the "impartial arbitrator" by alternately striking names until one name remains, and the parties each select one of the two full time employee arbitrators. [Doc. 9, at 4]. Such reasoning must provide cold comfort to an employee in Plaintiff's position. She must participate in a process requiring that two of the three arbitrators be selected

13

from a pool of necessarily interested and conflicted employees and that the third "impartial arbitrator" be chosen from a list of labor lawyers who are selected from law firms that represent employers.

Defendant challenges as "unfounded speculation" Plaintiff's assertion that the pool of single "impartial arbitrators" effectively excludes every Plaintiff's employment law firm from ever having a lawyer selected to arbitrate such claims. See [Doc. 9, at 3-4]. To the contrary, however, the intent of this limiting provision would appear precisely to be to eliminate Plaintiff's employment lawyers from the possibility of being selected, and to assure selection of an employment attorney who represents employers. The undersigned has presided over hundreds of employment discrimination cases over nearly fourteen years on the bench and is knowledgeable of the employment bar in the Atlanta metropolitan area and the size of its law firms on both sides. The Court is not aware of any law firms in the Atlanta area with over fifteen (15) lawyers that engages in a practice primarily representing employees in employment litigation.[2] The likelihood of a plaintiff's-side employment lawyer with fifteen years experience from a firm of

---

[2] One of the larger plaintiffs firms doing employment litigation, Buckley & Klein, advertise online as having eight lawyers. Another larger firm, Parks, Chesin & Walbert, advertises itself with nine attorney members. See www.buckleyklein.com; www.pcwlawfirm.com.

14

fifteen (15) or more lawyers appearing on the list of seven would be virtually nil. The bias inherent in such a selection procedure should be apparent.[3]

### c. Section 4 of the agreement is unconscionable

Setting aside the bias inherent in the arbitrator selection procedures contained in this agreement, Section 4 also gives Defendant the advantage of a certain amount of control over the rules governing the scheduling and conduct of the arbitration proceeding, <u>see</u> [Doc. 4-2 ¶¶ 4, 7]. In Section 4, Defendant reserves to itself the right to choose the arbitration service which will promulgate the rules that will govern the proceeding, without any prior notice or input by Plaintiff. [<u>Id.</u> ¶ 4]. In particular, Section 4 provides that, in lieu of following AAA rules, Defendant may designate the rules of "a comparable alternative dispute resolution service." Thus, Section 4 of the agreement in effect says that Defendant will be bound by the AAA Rules, unless it chooses to select another "comparable" service. <u>See</u> 1 Samuel Williston & Richard A. Lord, <u>A Treatise on the Law of Contracts</u> § 1:2 (4th ed.); [Doc. 4-2 ¶ 4]. Indeed, Plaintiff has no guarantee that the

---

[3] This is not to say that a labor attorney who actively represents clients primarily, if not exclusively, in defense of claims of discrimination could not act fairly in such an arbitration. But it would be to ignore reality not to acknowledge that the substantial likelihood of a bias would exist.

AO 72A
(Rev.8/82)

arbitration will be conducted according to the Employment Dispute Resolution Rules of the AAA, a known quantity in the world of employment arbitration.

Furthermore, Sections 4 and 7, when read together, give Defendant the choice of which "dispute resolution service" will select the pool of impartial attorney arbitrators from which the parties alternately strike. [Id.]. To be clear, Section 7 states that "an impartial arbitrator will be selected from a list of seven (7) qualified and impartial arbitrators provided to the parties by AAA." In actuality, the list "to be provided by AAA" might not be assembled by the AAA at all, but could be provided by any "alternative dispute resolution service that [Defendant] may designate," even though referred to in the agreement as AAA. See Nelson, 267 Ga. at 391-92 (listing conspicuousness and comprehensibility of contract language and the purpose and effect of the terms as among the factors to be considered in determining unconscionability). In total, Sections 4 and 7 allow Defendant to exercise unilateral control over the arbitral rules to be applied and the manner in which the proceeding is conducted, as well as how those who will arbitrate the dispute will be selected. Accordingly, the Court finds that Sections 4 and 7 contain such bias and one-sidedness as are "abhorrent to good morals and conscience" and that

their purpose is to take such advantage of another as would be found unconscionable under Georgia law. <u>Hall</u>, 159 Ga. at 667.

Defendant contends that any bias resulting from the arbitrator selection clause in Section 7 is a nullity because the FAA "protects against bias by providing that courts may overturn arbitration decisions where there was evident partiality or corruption in the arbitrators." [Doc. 9, at 4] (quoting <u>Gilmer</u>, 500 U.S. at 30). However, courts considering this issue have stated that "the general rule prohibiting pre-arbitration challenges to an allegedly biased arbitration panel does not extend to an allegation that the arbitrator-selection process itself is fundamentally unfair." <u>Walker</u>, 400 F.3d at 385 (citing <u>McMullen v. Meijer</u>, 355 F.3d 485, 494 n.7 (6th Cir. 2004). In such a case, "the arbitral forum is not an effective substitute for a judicial forum," and, thus, "the party need not arbitrate first and then allege bias through post-arbitration judicial review." <u>Id.</u>

### d. Mutuality and indefiniteness

Plaintiff also contends that the agreement lacks mutuality. Specifically, Plaintiff argues that the agreement is unenforceable because Defendant is not bound by the agreement to arbitrate claims and that the terms of Section 4 are too indefinite to constitute a promise. [Doc. 7, at 7-8]. Defendant responds by citing cases standing for the proposition that an arbitration agreement is

17

enforceable even though a plaintiff is the only party required to submit claims to arbitration. [Doc. 9, at 6-7].

Under Georgia law, "an arbitration agreement is not invalid because it lacks mutuality of remedy." Saturna v. Bickley Const. Co., 252 Ga. App. 140, 555 S.E.2d 825 (2001) (citing Crawford v. Results Oriented, 273 Ga. 884, 548 S.E.2d 342 (2001). "The doctrine of mutuality of remedy is limited to the availability of the ultimate redress for a wrong suffered by a plaintiff, not the means by which that ultimate redress is sought. A plaintiff does not seek as his ultimate redress an arbitration proceeding or a court proceeding. Instead, he seeks legal relief (e.g., damages) or equitable relief (e.g., specific performance) for his injury, and he uses the proceeding as a means to obtain that result." Green Tree Financial Corp. v. Vintson, 753 So.2d 497 (Ala. 1999), *cited in* Crawford, 273 Ga. at 884. Thus, the fact that Plaintiff is the only party bound by the arbitration provision, standing alone, does not appear to make the arbitration agreement unconscionable under Georgia law. But see Caley, F.3d at 1376 (mutuality present because the defendant was bound by the procedures outlined in the arbitration agreement and could only modify those terms upon notice to the plaintiff); Rushing v. Goldkist, Inc., 256 Ga. App. 115, 119, 567 S.E.2d 384 (2002) (finding mutuality where the parties were equally bound to comply with the same arbitration procedures).

18

Finding that this provision does not lack mutuality (or consideration), however, does not mean that the agreement is not defective. As previously discussed, the agreement's terms are oppressive and misleading and require that Plaintiff, the vastly weaker party in the employer-employee relationship, accept a biased dispute resolution process on a take it or leave it basis as a condition of her employment. See Nelson, 267 Ga. at 391-92 (listing relative bargaining power, oppressiveness of the terms, and the presence or absence of meaningful choice as factors in determining unconscionability). The agreement is a contract of adhesion in the sense that Plaintiff has no choice but to agree to it if she wishes to remain employed. See Walton Elec. Membership Corp. v. Snyder, 226 Ga. App. 673, 678 n.6, 487 S.E.2d 613 (1997) (citing Black's Law Dictionary 38 (5th ed.)).

### 4. Severability

Defendant submits that if the court finds that any of the agreement's provisions are unenforceable, the entire agreement should not fail because of the severability provision contained in Section 10. [Doc. 9, at 9]. Section 10 of the agreement states that "[i]f any part of this agreement is held ... unenforceable by any court ... nothing contained herein shall limit the enforceability of any other part." [Doc. 4-2 ¶ 10]. Defendant also gratuitously agrees to forego the provision that the two additional arbitrators

19

must be employees of Defendant and to proceed with a single impartial arbitrator, presumably the arbitrator selected from the list of employment defense law firms.

Under Georgia law, "[i]f the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result." O.C.G.A. § 11-2-302. As stated in the "Purposes" addendum to § 11-2-302, the Georgia General Assembly expressed its intentions as follows: "Under this section, the court, in its discretion, may refuse to enforce the contract as a whole if it is permeated by the unconscionability, or it may strike any single clause or group of clauses which are so tainted or which are contrary to the essential purpose of the agreement, or it may simply limit unconscionable clauses so as to avoid unconscionable results." Id. Other courts have foreclosed severance if the unconscionable provisions comprise essential aspects of the agreement as a whole, or if they demonstrate a systematic effort to create a one-sided, employer-friendly forum. Nino, 609 F.3d at 206-207 (citing Restatement (Second) of Contracts § 184).

In this case, the undersigned **RECOMMENDS** that the arbitration agreement should be found unenforceable. The Court has considered the terms of the arbitration agreement in their totality, with "a healthy regard for the federal policy favoring arbitration," <u>Mitsubishi</u>, 473 U.S. at 625, and finds that Sections 4 and 7 comprise essential aspects of the agreement and that the unconscionability contained within these sections permeate throughout. O.C.G.A. § 11-2-302. The Court cannot limit the unconscionable effect of these terms without rewriting the agreement with respect to its essential aspects, which, under O.C.G.A. § 11-2-302, this Court would be disinclined to do. Even if the Court were so inclined, the agreement provides no direction on how the arbitrator should be selected if Section 7 is severed.[4]

Alternatively, if severance is deemed to be an option, the undersigned would **RECOMMEND** that Sections 4 and 7 be severed and amended to address unfairness in the selection of arbitrators and the manner in which the applicable rules are designated. In particular, the provision in Section 7 requiring that two of the

---

[4] As previously discussed, the references to the AAA throughout the agreement do not bind the parties to submit to American Arbitration Association Rules. <u>See</u> <u>McMullen v. Meijer, Inc.</u>, 166 Fed. App'x. 164 (6th Cir. 2006) (finding that AAA rules governed the selection of an arbitrator where the arbitrator-selection clause was severed and another section of the agreement *committed* the parties to AAA rules) (emphasis added).

AO 72A
(Rev.8/82)

three arbitrators be full time employees of Defendant should be stricken.[5] Further, the language in Section 7 requiring that the impartial arbitrator be an attorney at a law firm with "more than 15 attorneys" should also be stricken, insofar as the firm size is mandated. Finally, the Court recommends that, for the reasons discussed, the provision in Section 4 allowing Defendant to choose "a comparable dispute resolution service" should be limited so as to bind the parties to the dispute resolution rules of the American Arbitration Association. In this regard, another alternative would be to order that the arbitrator selection process be governed entirely by the standard procedures for selection of three arbitrators offered by the AAA.[6]

## 5. Attorneys' Fees

Pursuant to 28 U.S.C. § 1927, Defendant SAAG requests that the Court award its reasonable attorneys' fees incurred in bringing the motion to compel arbitration. Section 1927 states that any attorney who "multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the ... attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. In light of the determinations and

---

[5] Defendant has stated that it would agree to this amendment. See [Doc. 9, at 4].

[6] See http://www.adr.org/sp.asp?id=32904#emp

22

recommendations discussed herein, this Court finds that Plaintiff had a legal basis for refusing to submit to arbitration and that her refusal did not multiply these proceedings unreasonably or vexatiously. Defendant's request for attorneys' fees is therefore **DENIED**.

### III.
### Conclusion

For the reasons expressed herein, the Court concludes that no enforceable agreement to arbitrate exists in this case. Accordingly, the Court **RECOMMENDS** that Defendant's motion to compel arbitration and for a stay of proceedings, [Doc. No. 4], be **DENIED**. Attorneys' fees and expenses incurred in filing the motion under 28 U.S.C. § 1927, are also **DENIED**.

Alternatively, should it appear that the arbitration agreement could be preserved through its severability clause, the Court **RECOMMENDS** that the agreement's terms be stricken and limited as discussed herein above.

It is **SO ORDERED, REPORTED AND RECOMMENDED**, this 27th day of February, 2012.

S/ *E. Clayton Scofield III*
E. Clayton Scofield III
UNITED STATES MAGISTRATE JUDGE

23

24